IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| R.K.C.J., LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:20-cv-533-K |
| | § | |
| TEXAS CAPITAL BANK, N.A., | § | |
| | § | |
| Defendant. | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

Defendant Texas Capital Bank, N.A. has filed a motion for attorneys' fees pursuant to Federal Rule of Civil Procedure 54 and 42 U.S.C. § 1988. *See* Dkt. No. 9. United States District Judge Ed Kinkeade referred this to the undersigned United States magistrate judge under 28 U.S.C. § 636(b). *See* Dkt. No. 11.

Plaintiff R.K.C.J., LLC, has filed its opposition in response to the motion. *See* Dkt. No. 10. Texas Capital Bank has not filed a reply, and the deadline to do so has expired.

For the reasons explained below, the Court should grant Texas Capital Bank's motion for attorneys' fees [Dkt. No. 9].

## Background

On March 2, 2020, R.K.C.J. filed this action against Texas Capital Bank. *See* Dkt. No. 1. In doing so, R.K.C.J. sought redress for an alleged deprivation of rights under the Civil Rights Act of 1871, 42 U.S.C. §§ 1981 and 1983, and the Civil Rights Act of 1964, as amended in 1972, and to achieve redress for violation of the provisions of the Equal Credit Opportunity Act, 15 U.S.C. §1691. *See id.*

According to R.K.C.J., in late January or early February of 2020, R.K.C.J. sought financing from Texas Republic Bank, N.A. but was refused except under terms that R.K.C.J. claims were onerous. *See* Dkt. No. 9. R.K.C.J. contends that Texas Republic Bank's refusal to provide reasonable terms was a result of unlawful race discrimination. *See* Dkt. No. 1.

But R.K.C.J did not sue Texas Republic Bank. Instead it sued Texas Capital Bank by mistake. Texas Capital Bank claims that it was not involved in the underlying credit transaction at issue in this case and had no interaction with R.K.C.J. before this lawsuit was filed.

On April 2, 2020, Texas Capital Bank filed a motion to dismiss R.K.C.J.'s claims against it. *See* Dkt. No. 4.

And R.K.C.J. apparently acknowledged that it mistakenly sued Texas Capital Bank instead of Texas Republic Bank, because, on April 15, 2020, R.K.C.J. voluntarily dismissed Texas Capital Bank from this action. *See* Dkt. No. 7.

And this case was terminated on April 15, 2020. *See* Minute Entry dated Apr. 15, 2020.

Texas Capital Bank claims that, "[u]nder the circumstances, it is clear that Plaintiff withdrew its claims against Defendant to avoid a disfavorable judgment on the merits and that Plaintiff's claims against Defendant were frivolous, unreasonable, and without foundation." Dkt. No. 9 at 5-6. As a result, Texas Capital Bank has filed a motion to recover its attorneys' fees under 42 U.S.C. § 1988 and Federal Rule of Civil Procedure 54. *See id.* at 6.

R.K.C.J. opposes the motion and argues that, because it voluntarily dismissed this action, Texas Capital Bank is not a prevailing party on the merits, as is required by Section 1988 in order to recover attorneys' fees. *See* Dkt. No. 10. R.K.C.J. also argues that Texas Capital Bank is time barred from requesting relief. *See id.*

For the reasons and to the extent explained below, the undersigned concludes that the Court should grant Texas Capital Bank's motion for attorneys' fees [Dkt. No. 9].

## Legal Standard

Federal Rule of Civil Procedure 54(d)(2) provides that "[a] claim for attorney's fees and related nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages." FED. R. CIV. P. 54(d)(2)(A). And, unless a statute or court order provides otherwise, a party's motion for attorneys' fees must: "**(i)** be filed no later than 14 days after the entry of judgment; **(ii)** specify the judgment and the statute, rule, or other grounds entitling the movant to the award; **(iii)** state the amount sought or provide a fair estimate of it; and **(iv)** disclose, if the court so orders, the terms of any agreement about fees for the services for which the claim is made." FED. R. CIV. P. 54(d)(2)(B).

Where attorneys' fees are not required under the relevant substantive law, the rule also permits an award of attorneys' fees by motion specifying the statute, rule, or other grounds entitling the movant to the award. FED. R. CIV. P. 54(d)(2)(B)(ii). Although under the "American rule" a prevailing party is not automatically entitled

to attorneys' fees, Rule 54 provides a common exception to this tradition. *See Summit Valley Indus, Inc. v. United Bhd. of Carpenters & Joiners*, 456 U.S. 717, 721 (1982).

Here, Texas Capital Bank asserts that it is entitled to attorneys' fees under 42 U.S.C. § 1988. That section provides, in pertinent part, as follows:

> In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92-318, the Religious Freedom Restoration Act of 1993, the Religious Land Use and Institutionalized Persons Act of 2000, title VI of the Civil Rights Act of 1964, or section 12361 of Title 34, the court, in its discretion may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

42 U.S.C. § 1988. An award of attorneys' fees under Section 1988(b) can be made to a defendant if the plaintiff's claim was "frivolous, unreasonable, or groundless," or when "the plaintiff continued to litigate after it clearly became so." *Christianburg Garment Co. v. EEOC*, 434 U.S. 412, 422 (1998). The court need not make a finding of bad faith for an award of attorneys' fees under Section 1988(b), but, "if plaintiff is found to have brought or continued such a claim in bad faith, there will be even stronger basis for charging him with attorney's fees incurred in the defense." *Id.*

"Although attorney's fees for prevailing plaintiffs are almost always awarded, attorney's fees for defendants are only awarded 'upon a finding that that the plaintiff's action was frivolous, unreasonable, or without foundation.'" *DeRamus v. City of Alexandria*, 675 F. App'x 408, 412 (5th Cir. 2017) (per curiam) (quoting *Fox v. Vice*, 563 U.S. 826, 833 (2011); *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978)). Indeed, "attorney's fees for prevailing defendants are presumptively unavailable unless a showing is made that the underlying civil rights suit was

vexatious, frivolous, or otherwise without merit." *Dean v. Riser*, 240 F.3d 505, 508 (5th Cir. 2001); *see also Nieman v. Milam*, No. 3:14-cv-3897-M (BT), 2018 WL 2604862, at *1 (N.D. Tex. May 11, 2018), *adopted by* 2018 WL 2575231 (N.D. Tex. June 4, 2018). "The 'stringent standard applicable to defendants is intended to ensure that plaintiffs with uncertain but arguably meritorious claims are not altogether deterred from initiating litigation by the threat of incurring onerous legal fees should their claims fail.'" *Myers v. City of West Monroe*, 211 F.3d 289, 292 n.1 (5th Cir. 2000) (quoting *Aller v. N. Y. Bd. of Elections*, 586 F. Supp. 603, 605 (S.D.N.Y. 1984)).

The United States Court of Appeals for the Fifth Circuit has defined three factors that are important to consider in evaluating whether a claim was frivolous: first, whether the plaintiff established a prima facie case; second, whether the defendant offered to settle the case; and, third, whether the district court dismissed the case or held a full-blown trial. *See United States v. Miss.*, 921 F.2d 604, 609 (5th Cir. 1991); *see also Mvers v. City of W. Monroe*, 211 F.3d 289 (5th Cir. 2000).

In determining whether an action was frivolous, the Court must determine "whether the case was so lacking in merit that it was groundless, rather than whether the claim was ultimately successful." *United States v. Mississippi*, 921 F.2d 604, 609 (5th Cir. 1991) (citing *Jones v. Tex. Tech. Univ.*, 656 F.2d 1137, 1145 (5th Cir. 1981); *Plemer v. Parsons-Gilbane*, 713 F.2d 1127, 1140-41 (5th Cir. 1983)). The fact that claims were dismissed before trial is not sufficient by itself to support a finding of frivolity. *See Myers*, 211 F.3d at 293 (citing *Hidden Oaks, Ltd. v. City of Austin*, 138 F.3d 1036, 1053 (5th Cir. 1998)). Courts are generally reluctant to award fees to a

prevailing defendant unless the plaintiff "refused to acknowledge clear precedent or asserted a claim which was based knowingly on a nonexistent interest." *Pisharodi v. Valley Baptist Med. Ctr.*, 393 F. Supp. 2d 561, 578 (S.D. Tex. 2005) (citations and internal quotation marks omitted). But, even in the face of a finding of frivolity, the court retains discretion to deny a fee request in view of the circumstances of a particular case. *See Williams-Boldware v. Denton Cty.*, Civ. No. 4:09-cv-591, 2013 WL 12242263, at *1 (E.D. Tex. Jan. 3, 2013) ("A determination that a complaint was frivolously filed, however, does not require a fortiori an award of attorneys' fees to even a prevailing Defendant.") (citing *Tang v. R.I. Dep't of Elderly Affairs*, 163 F.3d 7, 15 (1st Cir. 1998)).

Finally, "the fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley v. Eckerhart*, 461 U.S.434, 437 (1987).

In *Dean v. Riser*, 240 F.3d 505 (5th Cir. 2001), the Fifth Circuit addressed the meaning of "prevailing party" in Section 1988. In *Dean*, several former employees voluntarily dismissed their 42 U.S.C. § 1983 claims against a sheriff after a year of litigation. *See id.* at 507. The sheriff asked the district court to award attorneys' fees under Section 1988, but the district court denied the request, determining that the sheriff was not a prevailing party in the absence of a ruling on the merits. *See id.* The Fifth Circuit vacated and remanded, declining to adopt a rigid standard of defining a prevailing party under Section 1988 as one who had obtained a judicial declaration to his benefit. *See id.* at 510-11. Instead, the Fifth Circuit held that a defendant is not

a prevailing party under Section 1988 when the plaintiff voluntarily dismisses his claims, "unless the defendant can demonstrate that the plaintiff withdrew to avoid a disfavorable judgment on the merits." *Id.* at 511.

Rather than establish a blanket rule as to whether a defendant is a prevailing party when plaintiff voluntarily dismisses the case, the Fifth Circuit determined that the trial court should conduct a case-by-case analysis and "balance the concerns for encouraging vigorous enforcement of civil rights against discouraging frivolous litigation within the specific and unique context of each individual case." *Id.*

## Analysis

Texas Capital Bank first argues that its motion for attorneys' fees is timely because, under Rule 54, any such motion must be filed no later than 14 days after the entry of judgment, and in this case no judgment has been entered. *See* Dkt. No. 9 at 9.

Next, Texas Capital Bank argues that it is a prevailing party under Section 1988 because R.K.C.J. voluntarily dismissed its claims to avoid a judgment on the merits and because R.K.C.J.'s claims were frivolous, groundless, or without merit. *See id.*

Texas Capital Bank argues that, notwithstanding the fact that R.K.C.J. sued the wrong party, R.K.C.J.'s underlying causes of action are based on conclusory and speculative allegations. *See id.* at 10. Texas Capital Bank also points out that many of the statutes that R.K.C.J. invoked do not provide a private right of action. *See id.*

Turning to the fact that R.K.C.J. sued the wrong entity, Texas Capital Bank claims that R.K.C.J.'s first attempt to discuss its claims with Texas Capital Bank or defense counsel was on April 7, 2020 – after it had already filed this action. *See id.* During that discussion, it became apparent that R.K.C.J.'s dispute was with Texas Republic Bank and not Texas Capital Bank. *See id.*

Texas Capital Bank argues that the error on R.K.C.J.'s behalf in naming Texas Capital Bank as Defendant in this lawsuit illustrates the frivolity of R.K.C.J.'s claims. *See* Dkt. No. 9 at 11.

And Texas Capital Bank argues that a cursory review of state business entity records reveals that there is no link between Texas Capital Bank and Texas Republic Bank. *See id.*

In essence, Texas Capital Bank argues that, with "minimal effort," R.K.C.J. could have identified that correct party to name as the defendant. *See id.* Texas Capital Bank claims that R.K.C.J.'s failure to avoid such an obvious error is proof that its claims against Texas Capital Bank are frivolous, groundless, and meritless. *See id.*

And Texas Capital Bank asserts that R.K.C.J.'s voluntary dismissal shows R.K.C.J.'s "desire to avoid an unfavorable judgement on the merits can be inferred based on the record and is, indeed, understandable under the circumstances," *id.* at 12, especially because Texas Capital Bank had filed a motion to dismiss R.K.C.J.'s complaint, *see id.*

As a result of R.K.C.J.'s error, Texas Capital Bank argues that it is entitled to $13,710.00 in attorneys' fees to cover the costs incurred in defending against R.K.C.J.'s frivolous lawsuit. *See id.* at 13.

R.K.C.J. responds by first arguing that the deadline for filing a Rule 54 motion for attorneys' fees has expired. *See* Dkt. No. 10 at 6. In R.K.C.J.'s view, its stipulation of dismissal serves as the judgment in this case, and, R.K.C.J. argues that, because that was entered on April 15, 2020, Texas Capital Bank's motion for attorneys' fees is about two months late under Rule 54. *See id.*

Next R.K.C.J. argues that, under Section 1988, a prevailing party is "one who has succeeded on any significant issue in litigation which achieved some of the benefit the parties sought in bringing suit and who is 'able to point to a resolution of the dispute which changes the legal relationship between itself and the defendant.'" *Id.* at 7 (quoting *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 791-93 (1989)). In R.K.C.J.'s view, the dismissal of the case was a result of a "mutual mistake" by both Texas Capital Bank and R.K.C.J., *see* Dkt. No. 10 at 7.

R.K.C.J. asserts that Texas Capital Bank is "hardly a prevailing party that prevailed on the merits before or after litigation." *Id.* R.K.C.J. also argues that the fact that it voluntarily dismissed this case is not itself a sufficient justification for awarding attorneys' fees to Texas Capital Bank. *See id.* at 8-9. And R.K.C.J appears to argue that the filing of this lawsuit against Texas Capital Bank was the result of a mutual mistake by both R.K.C.J. and Texas Capital Bank. *See id.* In this regard,

R.K.C.J. argues that this mutual mistake creates an insurmountable burden of proof for Texas Capital Bank to overcome and recover attorneys' fees. *See id.* at 9.

R.K.C.J next argues that the Supreme Court's decision in *CRST Van Expedited, Inc. v. EEOC*, 136 S. Ct. 1642 (2016), controls here. More specifically, R.K.C.J. claims that,

> [i]n *CRST*, *Supra*, the parties entered the discovery portion of the litigation. *Id.* at 1649. The Court notes that the Equal Employment Opportunity Commission, charged with bringing the class action on behalf a group of the female employees at CRST, did not investigate many of the claims of the women who were listed as plaintiffs in the action. *Id.* The Court held that the failure of the plaintiff to do any investigation into members of a class action was enough to provide fees to the prevailing defendant when analyzing the totality of the circumstances. *Id.* at 1651. *CRST* thus dealt with unilateral, not mutual mistake, of a class action case taken to the discovery stage and is therefore distinguishable. *Id.*
>
> Here, in contrast to *CRST*, Movant only had to place one phone call to its one client to determine who from the bank met with Respondent, when and where. Movant did not.

Dkt. No. 10 at 9-10.

R.K.C.J. also argues that, in the Fifth Circuit, "'[t]o determine if the defendant is a prevailing party the courts generally consider whether the plaintiff established a prima facie case, whether the defendant offered to settle, and whether the court dismissed the case or held a full trial to be factors important to frivolity determination.'" *Id.* at 10 (quoting *Cantu Services, Inc. v. Frazier*, 682 F. App'x 339, 342 (5th Cir. 2017)). R.K.C.J. argues that Texas Capital Bank "is not a prevailing party within the interpretation of the Fifth Circuit and Supreme Court. There was

nothing even close to discovery, a hearing, trial, or earnest preparation for trial, before the mutual mistake was discovered." Dkt. No. 10 at 10.

And R.K.C.J. argues that Texas Capital Bank's motion to dismiss reveals that Texas Capital Bank "completely ignored the most basic fact-checking and due diligence." *Id.*

R.K.C.J. also claims that Texas Capital Bank is equally at fault for the mistake because, in Texas Capital Bank's motion to dismiss, it never accuses R.K.C.J. for suing the wrong party. *See id.*

In R.K.C.J.'s view, this case is distinguishable from *Dean* because the claims in this case have been re-filed in this court, naming the correct parties. *See id.* at 11. R.K.C.J. argues that it could have easily amended the complaint to add the correct party instead of dismissing the case entirely. *See id.* R.K.C.J. argues that this fact alone shows that its claims are meritorious. *See id.*

Finally, R.K.C.J. argues that, even if Texas Capital Bank is deemed the prevailing party, its attorneys' fees should be limited to a reasonable fee after an investigation into the facts. *See id.* R.K.C.J. asserts that Texas Capital Bank's claim for $13,710.00 in fees is not reasonable. *See id.*

The undersigned first concludes that Texas Capital Bank's motion is timely.

Rule 54 requires that, unless a statute or court order provides otherwise, a party's motion for attorneys' fees must be filed with the court no later than 14 days after the entry of final judgment. *See* FED. R. CIV. P. 54(d)(2)(A). Here, Section 1988

-11-

does not provide an alternative deadline, nor is there a court order in the record that governs the timing of motions for attorneys' fees.

Texas Capital Bank argues that, because there is no judgment in the record, its motion is timely. R.K.C.J. argues that its notice of voluntary dismissal serves as the final judgment in this case. The undersigned agrees with Texas Capital Bank.

In federal court, a final judgment follows a decision. And a decision describes determinations of fact made by a judge's finding or by a jury verdict. *See* 10 WRIGHT & MILLER § 2651.

Here, R.K.C.J. argues that its Rule 41(a)(1)(ii) stipulation of dismissal, dated April 15, 2020, serves as the judgment in this case. *See* Dkt. No. 10 at 6-7. The undersigned disagrees. "Ultimately, a Rule 41(a)(1) dismissal is not a 'final judgment.'" *Harvey Specialty & Supply, Inc. v. Anson Flowline Equipment Inc.*, 434 F.3d 320, 324 (5th Cir. 2005). While this case was terminated on April 15, 2020, no judgment was entered. Texas Capital Bank's motion is timely.

Turning to the substance of Texas Capital Bank's motion, the undersigned considers the standard under *Dean v. Riser* and concludes that R.K.C.J. voluntarily dismissed this action against Texas Capital Bank to avoid a judgment on the merits and that R.K.C.J.'s claims against Texas Capital Bank are frivolous, groundless, or without merit. *See* 240 F.3d at 511.

As to the first prong of the *Dean* analysis, given the facts of this case and the context in which R.K.C.J. filed a voluntary dismissal, it is apparent that R.K.C.J. did so in order to avoid a judgment on the merits. In other words, it appears that R.K.C.J.

filed its voluntary dismissal only after it discovered that Texas Capital Bank was not the correct defendant in the case and R.K.C.J. realized that it did not have any claims against Texas Capital Bank.

And there is no countervailing evidence that would suggest that R.K.C.J. did not file the voluntarily dismissal to avoid judgment on the merits of its claims against Texas Capital Bank. For example, R.K.C.J. did not "withdraw its complaint in federal court to pursue an exclusively state law cause of action" against Texas Capital Bank. *Davis,* 240 F.3d at 511. Similarly, the case was not resolved through a full trial. And this action was not voluntarily dismissed after the parties reached a settlement agreement that resolved R.K.C.J.'s claims. There does not appear to be any alternative, legitimate litigation strategy for dismissing the claims against Texas Capital Bank.

And R.K.C.J.'s claims against Texas Capital Bank are groundless and without merit. Indeed, R.K.C.J. admits that it has no dispute with Texas Capital Bank.

R.K.C.J. frames its error as a mutual mistake. And R.K.C.J. argues that Texas Capital Bank should have engaged in more intensive due diligence to discover that it was not the party that was supposed to be sued. But this argument overlooks the fact that, as the plaintiff, R.K.C.J. is the master of its complaint, and that necessarily means that R.K.C.J. cannot blame Texas Capital Bank for not knowing which entity R.K.C.J. intended to sue.

R.K.C.J., not Texas Capital Bank, should have conducted a satisfactory investigation before filing this lawsuit. A phone call to Texas Capital Bank or a pre-

litigation demand letter could have resolved the mistake and obviated any need to file this action.

And R.K.C.J.'s assertion that its claims are not meritless because it is currently suing Texas Republic Bank is unpersuasive. The critical issue is whether R.K.C.J.'s claims filed in this case against Texas Capital Bank have merit, not whether R.K.C.J.'s claims against an unrelated entity in another lawsuit have merit.

The undersigned thus concludes that, given that both parties agree that Texas Capital Bank is not the correct defendant, R.K.C.J.'s claims against Texas Capital Bank in this action are groundless and without merit.

Pursuant to Section 1988 and the standard set forth in *Dean*, the Court should grant attorneys' fees to Texas Capital Bank.

The remaining issue is whether fees amounting to $13,710.00 are warranted.

To calculate attorneys' fees, "[t]his Court uses the 'lodestar' method," *Western Healthcare v. Nat'l Fire and Marine Insurance Co.*, No. 3:16-cv-565-L, 2016 WL 7735761, *3 (N.D. Tex. Dec. 28, 2016) (quoting *Heidtman v. Cty. of El Paso*, 171 F.3d 1038, 1043 (5th Cir. 1999)) (citations omitted), which it calculates by multiplying the number of hours an attorney reasonably spent on the case by an appropriate hourly rate – the market rate in the community for this work, *see Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 490 (5th Cir. 2012).

"A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d

1292, 1299 (11th Cir. 1988) (*citing Blum v. Stenson*, 465 U.S. 886, 895-96 n.11 (1984)). The relevant legal community is the community in which the district court sits. *See Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002). Generally, the reasonable hourly rate for a community is established through affidavits of other attorneys practicing there. *See id.* But the Court also may use its own expertise and judgment to make an appropriate independent assessment of the hourly rates charged for the attorneys' services. *See Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004); *Vanliner Ins. Co. v. DerMargosian*, No. 3:12-cv-5074-D, 2014 WL 1632181, at *2 (N.D. Tex. Apr. 24, 2014) (noting that the Court is an expert on the reasonableness of attorneys' fees).

The party seeking reimbursement of attorneys' fees bears the burden to "produce satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation," *Blum*, 465 U.S. at 896 n.11, as well as to establish the number of hours expended through the presentation of adequately recorded time records as evidence, *see Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993). A movant seeking attorneys' fees is also "charged with the burden of showing the reasonableness of the hours billed and, therefore, are also charged with proving that they exercised billing judgment," which "requires documentation of the hours charged and of the hours written off as unproductive, excessive, or redundant." *Saizan v. Delta Concrete Prods., Inc.*, 448 F.3d 795, 799 (5th Cir. 2006) (footnotes omitted).

The Court should use this reported time as a benchmark and then exclude any time that is excessive, duplicative, unnecessary, or inadequately documented. *See Watkins*, 7 F.3d at 457. The hours remaining are those reasonably expended. *See id.*

There is a strong presumption of the reasonableness of the lodestar amount. *See Perdue v. Kenny A.*, 559 U.S. 542, 552 (2010); *Saizan*, 448 F.3d at 800. Further, "[i]f a party does not object to particular billing entries as inadequately documented, the court is not obligated *sua sponte* to sift through fee records searching for vague entries or block billing. It is a common practice for courts to address only those potentially inadequate entries brought to the court's attention." *Hoffman v. L & M Arts*, No. 3:10-cv-953-D, 2015 WL 3999171, *5 (N.D. Tex. July 1, 2015).

And the Court should not "eliminate wholesale the services of attorneys without identifying the particular services which are regarded as duplicative." *Tasby v. Estes*, 651 F.2d 287, 289-90 (5th Cir. Unit A July 1981) (internal quotation marks omitted). "Percentage reductions are appropriate when attorneys impermissibly engage in block billing or fail to exercise billing judgment" – including by failing to write off time spent on work that was redundant and in hindsight may have been unnecessary – or "when a court reduces excessive time spent on particular legal services" or for particular services that are "duplicative." *Fralick v. Plumbers & Pipefitters Nat'l Pension Fund*, No. 3:09-cv-752-D, 2011 WL 487754, at *13 (N.D. Tex. Feb. 11, 2011); *Shepherd v. Dallas Cty., Tex.*, No. 3:05-cv-1442-D, 2009 WL 977294, at *2 n.3 (N.D. Tex. Apr. 10, 2009); *accord Saizan*, 448 F.3d at 799 ("The proper remedy for omitting evidence of billing judgment does not include a denial of fees but,

rather, a reduction of the award by a percentage intended to substitute for the exercise of billing judgment." (footnote omitted)); *Cookston v. Freeman, Inc.*, No. 3:98-cv-2106-D, 1999 WL 714760, at *5 (N.D. Tex. Sept. 14, 1999).

After calculating the lodestar, the Court may either (1) accept the lodestar figure or (2) decrease or enhance it based on the circumstances of the case, taking into account what are referred to as the *Johnson* factors. *See La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324, 329 (5th Cir. 1995); *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), *overruled on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 90 (1989). The *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the legal issues; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment by the attorney as a result of taking the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or other circumstances; (8) the monetary amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) whether the case is undesirable; (11) the nature and duration of the professional relationship with the client; and (12) awards in similar cases. *See Johnson*, 448 F.2d at 717-19; *see also Saizan*, 448 F.3d at 800. Because the lodestar is presumed to be reasonable, it should be modified only in exceptional cases. *See Watkins*, 7 F.3d at 457.

The undersigned recognizes that the analysis set forth above, and particularly the interplay of the lodestar analysis and the *Johnson* factors, may have been called into question by the United States Supreme Court's decision in *Perdue v. Kenny A.*,

559 U.S. 542 (2010). *See Perdue*, 559 U.S. at 552-53; *S&H Indus., Inc. v. Selander*, No. 3:11-cv-2988-M-BH, 2013 WL 6332993, at *2-*3 (N.D. Tex. Dec. 5, 2013). But, the Fifth Circuit, without comment or reference to the *Perdue* decision, has continued to utilize the approach laid out by this Court. *See Black v. Settle Pou, P.C.*, 732 F.3d 492, 502-03 (5th Cir. 2013). *But see In re Pilgrim's Pride Corp.*, 690 F.3d 650, 663-64 (5th Cir. 2012) (analyzing whether any changes brought about by *Perdue* apply to bankruptcy attorneys' fees calculations); *but see also In re ASARCO, L.L.C.*, 751 F.3d 291, 296 (5th Cir. 2014) (following *Pilgrim's Pride*).

And the Fifth Circuit, in a more recent published opinion, has rejected the argument "that *Perdue* clearly disfavors applying the *Johnson* factors to determine a fee award and instead requires the use of only the lodestar." *Combs v. City of Huntington, Tex.,829* F.3d 388, 393 (5th Cir. 2016). The Court of Appeals explained that

> [w]e agree that Perdue requires courts to first calculate the lodestar; indeed, this has long been our practice. *See, e.g., League of United Latin Am. Citizens No. 4552 (LULAC) v. Roscoe Ind. Sch. Dist.*, 119 F.3d 1228, 1232 (5th Cir. 1997) ("The method by which the district court calculates an attorneys' fees award is well established. The district court first calculates the 'lodestar.'"). But Perdue does not, as Combs contends, make it impermissible to then consider any relevant Johnson factors. Perdue cautions against the sole use of the Johnson factors to calculate a reasonable attorney's fee but nowhere calls into question the use of relevant Johnson factors to make this determination. Indeed, Perdue expressly allows adjustments "in those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee." 559 U.S. at 554....
>
> And though the lodestar is presumed reasonable, it may be adjusted where it "does not adequately take into account a factor that

may be properly considered in determining a reasonable fee." *Perdue*, 559 U.S. at 554....*Perdue*, consistent with the Court's frequent pronouncements, explains that lodestar enhancements are to be rare....

In sum, the district court should begin by calculating the lodestar: the reasonable hours expended multiplied by a reasonable rate. The district court may then determine whether any other considerations counsel in favor of enhancing or decreasing the lodestar. In light of the "strong presumption" that the lodestar represents a sufficient fee, enhancements must necessarily be rare. *Perdue*, 559 U.S. at 553-54.

*Id.* at 393-95.

*Perdue*, then, did not change the proper method for calculating attorneys' fees awards in the Fifth Circuit.

Here, Texas Capital Bank seeks to recover fees of $300 an hour for Ms. Garrett, a sixth-year associate, for 27.10 hours total billable time associated with reviewing the case file, preparing Texas Capital Bank's motion to dismiss and the parties' stipulation of dismissal, and settlement negotiations. *See* Dkt. No. 9-4 at 2-3. Texas Capital Bank seeks to recover fees of $450 an hour for Mr. Albert, an attorney with thirty years' experience, for 11.9 hours billed for the motion to dismiss, the stipulation of dismissal, and settlement negotiations. *See id.* And defense counsel estimates that the fee associated for preparing the motion for attorneys' fees is $900. Thus, defense counsel asserts that the total fee amount is $13,710.00. *See id.*

The undersigned finds that these rates are reasonable and within the market rate for attorneys handling this type of litigation in the Dallas area. Having carefully reviewed defense counsel's affidavit, the undersigned finds that the 39 hours of attorney time – all incurred as a result of R.K.C.J.'s wrongfully naming Texas Capital

-19-

Bank as defendant in this case – are reasonable and necessary and not excessive, duplicative, or inadequately documented.

But the total amount cited by defense counsel is in fact lower than the sum of 27.10 hours at $300 an hour ($8,130) and 11.9 hours at $450 an hour ($5,355) plus an additional $900. Defense counsel calculates this to be $12,810 plus $900, amounting to $13,710. But, by the undersigned's calculation, it is $13,485 plus $900, for a sum total of $14,385.

In any case, because Texas Capital Bank has asserted that it is seeking a total $13,710, the undersigned concludes that $13,710 should be the amount awarded.

## Recommendation

The Court should grant the motion for attorneys' fees [Dkt. No. 9] and award Texas Capital Bank $13,710.00 in attorneys' fees under 42 U.S.C. § 1988.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the

factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

      DATED: August 24, 2020

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE